FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 3 0 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- against -

HALAL AHMED,

Defendant.

10-CR-70

Statement of Reasons Pursuant to
18 U.S.C. §3553(c)(2)



**JACK B. WEINSTEIN, Senior United States District Judge:**

A sentencing court shall "state in open court the reasons for its imposition of the

particular sentence." 18 U.S.C. §3553(c). If the sentence is not of the kind prescribed by, or is

outside the range of, the Sentencing Guidelines referred to in Section 3553(a)(4), the court shall

indicate the specific reasons for imposing a sentence different from that provided by the

Guidelines. 18 U.S.C. §3553(c)(2). These "reasons must also be stated with specificity in a

statement of reasons form." *Id.* Even though the Guidelines are now "advisory" rather than

mandatory, *see United States v. Booker*, 543 U.S. 220, 245-46 (2005), the sentencing court must

still adhere to the requirements of 18 U.S.C. §3553(c)(2). *United States v. Jones*, 460 F.3d 191,

197 (2d Cir. 2006).

The sentencing court's written statement of reasons shall be "a simple, fact-specific

statement explaining why the Guidelines range did not account for a specific factor or factors

under §3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006). Such a statement

should demonstrate that the court "'considered the parties' arguments' and that it has a 'reasoned

basis for exercising [its] own legal decisionmaking authority.'" *United States v. Cavera*, 550

F.3d 180, 193 (2d Cir. 2008) (en banc) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007))

(alterations in original).

1

From approximately April 2005 to October 2009, Halal Ahmed engaged in a fraudulent scheme with his codefendants, Ishwardat Raghunath and Phyllis Semongal, and others. Ahmed and his codefendants, together with others, recruited unsuspecting buyers with good credit scores to purchase residential properties in Queen, Brooklyn, and the Bronx. They did so by telling the buyers that the properties were valuable for investment purposes, and by promising them that they would not have to make mortgage payments or take possession of the properties. The defendants promised the buyers that the mortgage payments would be paid by others, or that they would be paid with rental income derived after the purchase. Some of the straw buyers were promised a fee, typically around $5,000, in exchange for allowing the defendants to use their names and credit ratings.

Ahmed and his associates then collected personal and financial information from the buyers. This information was used by the defendants to prepare fraudulent loan applications that were submitted to banks. These applications typically overstated the putative purchaser's income and bank account balances and stated that they held jobs that they did not. The sales prices of the properties—and the size of the resulting loans—were inflated by using fraudulent appraisals. After the mortgage loans were approved and closings arranged, the loan proceeds were deposited into bank accounts controlled by Ahmed's codefendant, Raghunath.

The defendants did not use the proceeds to pay off the mortgages; instead, they largely retained them for themselves. In some cases, they did make initial mortgage payments; these payments ceased shortly thereafter. In others, no payments were made at all.

As a result, some of the buyers were contacted by lenders and were informed that they were personally responsible for the mortgage in their name. This was contrary to representations made by Ahmed and Raghunath. In many instances, foreclosure lawsuits were filed in which the

2

straw purchasers were named as defendants. Raghunath and Ahmed filed false and unauthorized bankruptcy petitions to stay or avoid foreclosure.

An eighteen-count superseding indictment filed in early March 2011 charged Ahmed and Raghunath with a variety of crimes. On March 28, 2011, Ahmed pled guilty to Counts One, Three, Four, Five, Six, and Eleven of the superseding indictment. Count One charged that, between February 2003 and February 2010, within the Eastern District of New York and elsewhere, Ahmed and his codefendant Raghunath, together with others, knowingly and intentionally conspired to commit wire fraud proscribed by 18 U.S.C. § 1343 and bank fraud proscribed by 18 U.S.C. § 1344, in violation of 18 U.S.C. § 1349. Counts Three, Four, Five, and Six charged Ahmed with the substantive crime of wire fraud. *See* 18 U.S.C. § 1343. Count Eleven charged him with the substantive crime of bank fraud. *See* 18 U.S.C. § 1344.

Ahmed was sentenced on December 15, 2011. The proceeding was videotaped in order to develop an accurate record of the courtroom atmosphere, as well as the factors and considerations that a district court must evaluate in imposing a sentence in accordance with 18 U.S.C. § 3553(a). *See In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (describing the value of video recording for the review of sentences on appeal).

The court finds the total offense level to be 21 and defendant's criminal history category to be category I, yielding a Guidelines range of imprisonment of between thirty-seven and forty-six months. Each of the conspiracy and substantive offenses to which the defendant pled guilty carried a maximum term of imprisonment of 30 years. *See* 18 U.S.C. § 1343; *id.* § 1344; *id.* § 1349. Each offense to which the defendant pled guilty carried a maximum fine of $1,000,000.

Ahmed was sentenced to a year and a day of incarceration, and to three years of supervised release. A special assessment of $600 was imposed—$100 for each of the counts to

3

which the defendant pled guilty. No fine was imposed. The defendant agreed to forfeit $500,000; forfeiture in that amount was ordered. Ahmed was ordered to pay $1,373,333.11 in restitution.

Respectful consideration was given to the Sentencing Guidelines, the Sentencing Commission's policy statements, and all other factors listed under 18 U.S.C.§3553(a) to ensure that the sentence was "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C.§3553(a). The court imposed a non-Guidelines sentence under 18 U.S.C. §3553(a) and *Booker*.

The court considered the "nature and circumstances of the offense[s] and the history and characteristics of the defendant." 18 U.S.C.§3553(a)(1). The offenses are serious ones. Substantial losses were caused to institutions and individuals. A period of incarceration is required, as are the financial penalties described above.

The defendant was born in 1970 in Bangladesh. He had a happy childhood and enjoyed close relationships with his family members in that country. He immigrated legally to the United States in 1989 and became a U.S. citizen in 1994. He has four adult siblings. Mr. Ahmed supports his mother financially and she resides with him. He supported his father until his death in 2005. Mr. Ahmed married in 2006. He and his wife have a ten-month-old son. Mr. Ahmed provides a residence and financial support for various members of his family, and they remain supportive of him. He has held a variety of jobs since moving to the United States, and has been generally law-abiding. The conduct that led to the instant prosecution appears to be aberrant.

A sentence of a year and a day of incarceration, the term of supervised release imposed, and the monetary penalties described above reflect the seriousness of the offense and will promote respect for the law and provide just punishment. *See* 18 U.S.C.§3553(a)(2)(A).

4

Under 18 U.S.C.§3553(a)(2)(B), there are two important factors to be considered by the sentencing court: specific and general deterrence. General deterrence is effectuated by the term of incarceration required and the monetary penalties imposed. The sentence will send a clear message that fraudulent activity of this sort will result in punishment. Specific deterrence appears to be a less pressing consideration in this particular case, but it will be effectuated by the various penalties imposed, especially the incarceration required. It is unlikely that the defendant will engage in further criminal activity in light of his family ties and his regret for his past misdeed.

Jack B. Weinstein
Senior United States District Judge

Dated: December 16, 2011
Brooklyn, New York