UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ DEC 3 0 2011 ★

BROOKLYN OFFICE

UNITED STATES OF AMERICA

- against -

ISHWARDAT RAGHUNATH,

Defendant.

10-CR-70

Statement of Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

**JACK B. WEINSTEIN, Senior United States District Judge:**

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in Section 3553(a)(4), the court shall indicate the specific reasons for imposing a sentence different from that provided by the Guidelines. 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the Guidelines are now "advisory" rather than mandatory, *see United States v. Booker*, 543 U.S. 220, 245-46 (2005), the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

The sentencing court's written statement of reasons shall be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006). Such a statement should demonstrate that the court "'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) (en banc) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)) (alterations in original).

1

From approximately April 2005 to October 2009, Ishwardat Raghunath engaged in a fraudulent scheme—planned principally by Raghunath—with his codefendants, Halal Ahmed and Phyllis Semongal, and others. Raghunath and his codefendants, together with others, recruited unsuspecting buyers with good credit scores to purchase residential properties in Queen, Brooklyn, and the Bronx. They did so by telling the buyers that the properties were valuable for investment purposes, and by promising them that they would not have to make mortgage payments or take possession of the properties. The defendants promised the buyers that the mortgage payments would be paid by others, or that they would be paid with rental income derived after the purchase. Some of the straw buyers were promised a fee, typically around $5,000, in exchange for allowing the defendants to use their names and credit ratings.

Raghunath and his associates then collected personal and financial information from the buyers. This information was used by the defendants to prepare fraudulent loan applications that were submitted to banks. These applications typically overstated the putative purchaser's income and bank account balances and stated that they held jobs that they did not. The sales prices of the properties—and the size of the resulting loans—were inflated by using fraudulent appraisals. After the mortgage loans were approved and closings arranged, the loan proceeds were deposited into bank accounts that Raghunath controlled.

The defendants did not use the proceeds to pay off the mortgages; instead, they largely retained them for themselves. In some cases, they did make initial mortgage payments; these payments ceased shortly thereafter. In others, no payments were made at all.

As a result, some of the buyers were contacted by lenders and were informed that they were personally responsible for the mortgage in their name. This was contrary to representations made by Raghunath and his codefendant Ahmed. In many instances, foreclosure lawsuits were

filed in which the straw purchasers were named as defendants. Raghunath and Ahmed filed false and unauthorized bankruptcy petitions to stay or avoid foreclosure.

An eighteen-count superseding indictment filed in early March 2011 charged Raghunath and Ahmed with a variety of crimes. On March 28, 2011, Raghunath pled guilty to all the counts in which he was named in the superseding indictment—Counts One, Two, Five through Ten, and Twelve through Eighteen. Count One charged that, between February 2003 and February 2010, within the Eastern District of New York and elsewhere, Raghunath and his codefendant Ahmed, together with others, knowingly and intentionally conspired to commit wire fraud proscribed by 18 U.S.C. § 1343 and bank fraud proscribed by 18 U.S.C. § 1344, in violation of 18 U.S.C. § 1349. Count Two charged Raghunath with the substantive crime of wire fraud; Counts Five through Ten did the same. *See* 18 U.S.C. § 1343. Counts Twelve and Thirteen charged him with the substantive crime of bank fraud. *See* 18 U.S.C. § 1344. Counts Fourteen through Eighteen charged him with bankruptcy fraud. *See* 18 U.S.C. § 157(1).

Raghunath was sentenced on December 15, 2011. The proceeding was videotaped in order to develop an accurate record of the courtroom atmosphere, as well as the factors and considerations that a district court must evaluate in imposing a sentence in accordance with 18 U.S.C. § 3553(a). *See In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (describing the value of video recording for the review of sentences on appeal).

The court finds the total offense level to be 31 and defendant's criminal history category to be category I, yielding a Guidelines range of imprisonment of between 108 and 135 months. Each of the conspiracy and substantive bank and wire fraud offenses to which the defendant pled guilty carried a maximum term of imprisonment of thirty years. *See* 18 U.S.C. § 1343; *id.* § 1344; *id.* § 1349. Each bankruptcy fraud offense carried a maximum term of imprisonment of

3

five years. *See id.* § 157. The conspiracy offense to which the defendant pled guilty carried a maximum fine of $1,000,000; the wire fraud and bank fraud offenses did as well. Each of the bankruptcy fraud offenses carried a maximum fine of $250,000.

Raghunath was sentenced to forty months' incarceration and to three years of supervised release. A special assessment of $1500 was imposed—$100 for each of the counts to which the defendant pled guilty. No fine was imposed. The defendant agreed to forfeit $1,000,000; forfeiture in that amount was ordered. Raghunath was ordered to pay $1,373,333.11 in restitution.

Respectful consideration was given to the Sentencing Guidelines, the Sentencing Commission's policy statements, and all other factors listed under 18 U.S.C. § 3553(a) to ensure that the sentence was "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). The court imposed a non-Guidelines sentence under 18 U.S.C. § 3553(a) and *Booker*.

The court considered the "nature and circumstances of the offense[s] and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The offenses are extremely serious ones, and the defendant was principally responsible for the organization and the supervision of the fraudulent scheme. Substantial losses were caused to institutions and individuals. A substantial period of incarceration is required, as are the financial penalties described above.

The defendant was born in 1964 in Guyana. His father is deceased; his mother is in poor health and lives in New York. He has three siblings. Mr. Raghunath is a high school graduate and studied for a college degree in electrical engineering, although he did not graduate. The defendant is generally healthy but suffers from a variety of minor health problems. He married in 2000. Defendant has one child from a previous relationship and four children from the

marriage; the children's ages range from seventeen to six. The oldest child resides with Mr. Raghunath's mother and sister and is an excellent student; she is supported by her grandmother and her aunt. The four younger children are healthy and live in foster care.

Notably, Mr. Raghunath has a history of criminal activity, including a conviction for attempted robbery. He has demonstrated himself to be a callous and manipulative person, and tried to induce at least one of the victims of his present crimes not to report his illegal behavior to the police in exchange for money. The defendant has displayed little remorse for his crimes, despite the significant impact that they had on financial institutions and on individuals.

Other considerations, however, cut in favor of the imposition of a sentence outside the Guidelines range. Mr. Raghunath's mother, for whom he provided financial support and a residence before his arrest, is ill; he also supported his father before his death. Defendant has provided money to and a residence for his sister. Before his arrest, he provided monetary and emotional support for his extended family, and was very involved with his church.

A sentence of forty months of incarceration, the term of supervised release imposed, and the monetary penalties described above reflect the seriousness of the offense and will promote respect for the law and provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A).

Under 18 U.S.C. § 3553(a)(2)(B), there are two important factors to be considered by the sentencing court: specific and general deterrence. General deterrence is effectuated by the term of incarceration required and the monetary penalties imposed. The sentence will send a clear message that fraudulent activity of this sort will result in substantial punishment. Specific deterrence is a pressing consideration in this particular case. It will be effectuated by the lengthy term of incarceration ordered and the substantial financial obligations imposed.

5

Jack B. Weinstein
Senior United States District Judge

Dated: December 16, 2011
      Brooklyn, New York